UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

               Plaintiff,                           Case No.8:13-cv-1292-T-35TGW

     v.

ASSETS IDENTIFIED IN
PARAGRAPH 1 OF THE VERIFIED
COMPLAINT,

               Defendant.

_____/

### MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT

Pursuant to Rule 12(b)(6), Fed. R. Civ. P., Rule G(8)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and the due process clause of the Fifth Amendment, Claimants Timothy and Patricia Hummel ("Hummel") move to dismiss the Amended Verified Complaint for Forfeiture in Rem, Doc. 5 (the "Complaint"). This forfeiture action, and the DEA's "Operation Log Jam" from which this action follows, presents this Court with the latest installment of the modern American assault on the bedrock principle of mens rea. In the studied opinion of undersigned counsel, this action presents the first instance in the history of the Republic in which the government has sought to seize assets – and potentially, imprison its citizens – based on conduct that it literally would not have been possible for the citizenry to know was unlawful. Indeed, through this action the prosecution seeks to convert our government from one of laws not merely to one of men, but to a government of a single man – a chemist employed by the DEA named Terrance Boos. This action should be dismissed with prejudice

because the law on which it is based, as applied to these facts, is unconstitutionally vague.  This action should also be dismissed because it fails to either state a cause of action or establish the requisite nexus between the alleged unlawful conduct and the funds to be forfeited.  At a minimum, the government should be ordered to provide a more definite statement.  The grounds supporting this Motion are set forth in the following Memorandum.

## MEMORANDUM

### I.     Legal and Factual Background

#### A.     The Regulation of Controlled Substance Analogues

Title 21 U.S.C. § 841(a) makes it unlawful for any person to knowingly and intentionally manufacture, distribute, or dispense a controlled substance.  Title 21 U.S.C. § 813 provides that a controlled substance analogue shall, if intended for human consumption, be treated as a controlled substance.[1]  The term controlled substance analogue is defined by Title 21 U.S.C. § 802(32)(A) to mean a substance–

> (i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
> (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
> (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

---

[1]Section 813 and its accompanying definitional statute, Section 802(32)(A), will be referred to collectively in this motion as the "Analogue Act."

The first of the three prongs above is read in the conjunctive with the remaining two prongs.  That is, for a substance to be an analogue, it must have a chemical structure that is substantially similar to a controlled substance *and* it must either have a substantially similar effect on the central nervous system or be represented or intended to have such an effect.  *See United States v. Turcotte*, 405 F.3d 515, 521-23 (7th Cir. 2005); *United States v. Roberts*, 363 F.3d 118, 121 (2d Cir. 2004); *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003); *United States v. Hodge*, 321 F.3d 429, 433 (3d Cir. 2003); *United States v. Washam*, 312 F.3d 926, 930 n.2 (8th Cir. 2002); *United States v. Brown*, 279 F. Supp. 2d 1238, 1240 (S.D. Ala. 2003); *United States v. Forbes*, 806 F. Supp. 232, 235 (D. Colo. 1992).  In addition, the mens rea from the underlying Section 841 offense carries over to violations of the analogue offense – to be guilty "the defendant must know that the substance at issue meets the definition of a controlled substance analogue." *Turcotte*, 405 F.3d at 527; *Roberts*, 363 F.3d at 123.

### B.    The allegations of the Complaint

The Complaint asserts that the property in issue is forfeitable because it either facilitated or represents the proceeds of violations of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq*.  Doc. 5 ¶ 8.  The Complaint asserts that Hummel manufactured and distributed AM-2201, XLR-11, and "other controlled substance analogues," which the Complaint does not identify.  AM-2201 was not listed under federal law as a controlled substance until July 9, 2012,[2] Doc. 5 ¶ 22, and XLR-11 was not a listed controlled substance until ten months after the seizures at

---

[2]On July 9, 2012, Congress added twenty-six synthetic chemicals to the list of Schedule I controlled substances in the Synthetic Drug Abuse Prevention Act of 2012,  Pub. L. No. 112-144 § 1152.

issue.  Final Order, 78 Fed. Reg. 28735 (May 16, 2013).  The government claims these two substances were unlawful during the relevant time period on the theory that they are analogues of a third substance that is a listed controlled substance, JWH-018.  Doc. 5 ¶¶ 21, 22.

### C.    Prior and related litigation

This case arises out of a nationwide law enforcement action called Operation Log Jam, in which on a single day, July 25, 2012, the government executed seizure warrants and obtained indictments across the country relating to alleged controlled substance analogues.[3]  There has been recent litigation by Hummel and others regarding one of the substances at issue here, XLR-11.[4]

#### 1.    The prior Hummel litigation

In October 2012, Hummel filed a motion for return of seized property pursuant to Federal Rule of Criminal Procedure 41(g), in Case No. 8:12-mj-01457-TGW (M.D. Fla.).  Hummel's Rule 41(g) motion was consolidated for hearing with a motion to dismiss the indictment in a criminal case, *United States v. Fedida*, Case No. 6:12-cr-209-Orl-37DAB (M.D. Fl.).  A daylong evidentiary hearing was held on December 6, 2012, and supplemental briefing was filed following the evidentiary hearing.  Judge Dalton entered an order on May 1, 2013, denying Hummel's motion for return of property.  Among the issues addressed in the *Hummel/Fedida*

---

[3]Drug Enforcement Administration, DEA News: Nationwide Synthetic Drug Takedown (July 26, 2012), available at http://www.justice.gov/dea/pubs/pressrel/pr072612.html.

[4]The recent litigation involved XLR-11 and another substance, UR-144.  Because the forfeiture complaint here, unlike the seizure warrant, does not rely on allegations regarding UR-144, the discussion of that litigation here will focus on the evidence relating to XLR-11.

litigation was whether the Analogue Act is unconstitutionally vague as applied to XLR-11. Judge Dalton stated that there is a "principled disagreement among the experts" regarding whether XLR-11 is substantially similar in chemical structure to JWH-018.  Ex. 7 at 17.  The court stated, however, that this disagreement does not "render the Analogue Act vague."  *Id.* Instead, it concluded that a "reasonable layperson . . . could plausibly conclude" that XLR-11 is an analogue of JWH-018, which it stated is "all that is required."  *Id.* at 18.

Hummel has appealed the order denying his motion for return of property to the Eleventh Circuit Court of Appeals, where the appeal is presently pending.  The government has moved to dismiss Hummel's appeal as moot in light of its filing of this forfeiture action, which Hummel has opposed.   If the Eleventh Circuit hears Hummel's appeal and reverses the denial of Hummel's motion for return of property, its ruling may moot some or all of the issues Hummel raises here. Hummel recognizes that in light of this fact, the Court may wish to defer ruling on this motion or stay this matter pending the outcome of Hummel's appeal.  Hummel neither seeks nor opposes such a stay.

The following materials from the *Hummel/Fedida* litigation are attached as exhibits:

| Exhibit | Description |
|---|---|
| 1 | Hummel Motion for Return of Property with supporting exhibits |
| 2 | Fedida Motion to Dismiss |
| 3 | Transcript of December 6, 2012, hearing |
| 4 | Hummel Supplemental Brief in Support of Motion for Return of Property |
| 5 | Brief of Amicus Curiae National Association of Criminal Defense Lawyers |
| 6 | Order Denying Motion to Dismiss in *Fedida* |
| 7 | Order Denying Motion for Return of Property in *Hummel* |
| 8 | Initial Brief in *Hummel* |

2.      The *Smoke Shop* litigation

The only federal court to date to have squarely addressed the question of whether XLR-11 is an analogue of JWH-018 is the Eastern District of Wisconsin in *The Smoke Shop, LLC v. United States*, 2013 WL 2632575 (E.D. Wis. May 21, 2013). The court in *Smoke Shop* considered a motion for return of property under Rule 41(g), in which the property at issue included products containing XLR-11. *Id.* at *1. The court held an evidentiary hearing on the motion, which was followed by a deposition and additional briefing. *Id.* While the motion was pending, however, XLR-11 was added to Schedule I on an emergency basis, and as a result, the district court was forced to deny the motion. *Id.* The court stated, however, that but for the scheduling of the substances at issue, it would have granted the motion because "the overwhelming weight of opinion in the scientific community" is that XLR-11 is not substantially similar in chemical structure to JWH-018. *Id.* The court further noted that the DEA's decision to emergency schedule XLR-11 suggests that was not "an analogue[] in the first instance." *Id.* While the *Smoke Shop* court had no choice but to deny the motion for return of property due to the after-the-fact scheduling, it stated that the plaintiff could "recoup his losses through further litigation against the government," and allowed the plaintiff time to amend the pleadings. *Id.*

The following materials from the *Smoke Shop* litigation are attached as exhibits:

| Exhibit | Description |
|---------|-------------|
| 9 | Motion for Return of Property |
| 10 | Transcript of February 28, 2013, evidentiary hearing |
| 11 | Post-Hearing Brief by The Smoke Shop |
| 12 | Order |

## II.   The Complaint Should be Dismissed for Failure to State a Claim.

The Complaint should be dismissed because it fails to allege that Hummel, or anyone,

acted with mens rea, that is, knowledge that the substances at issue are controlled substance analogues. *See Turcotte*, 405 F.3d at 527; *Roberts*, 363 F.3d at 123. The Supplemental Rules governing civil forfeiture actions impose a "heightened burden for pleading on the plaintiff" beyond that in ordinary civil actions in light of the "drastic nature" of the remedies available. *United States v. All Assets*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008). Where a complaint fails to allege the essential element of mens rea, it is subject to dismissal. *Panama v. BCCI Holdings*, 119 F.3d 935, 949 (11th Cir. 1997). In the context of a civil forfeiture action, the government is required to establish "both the prohibited conduct and the mental state required by the statute." *United States v. Dollar Bank Money Market Account*, 980 F.2d 233, 236 (3d Cir. 1992).

The Complaint alleges DEA chemists have opined that XLR-11 and AM-2201 are substantially similar in chemical structure to JWH-018 and that each has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to that of JWH-018. Doc. 5 ¶¶ 21, 22. The Complaint does not allege, however, that Hummel knew that either XLR-11 or AM-2201 was a controlled substance analogue. With regard to AM-2201, the Complaint alleges that "Hummel and his associates knew that AM-2201 . . . had a substantially similar or greater pharmacological effect" as JWH-018, but does not allege that Hummel knew AM-2201 was substantially similar in chemical structure. Doc. 5 ¶ 27. Instead, it alleges only that Hummel knew that "AM-2201 varied by only one atom from JWH-018." *Id.* Knowledge that the two substances differ by one atom, however, is not the equivalent of knowledge that they are substantially similar in chemical structure. The Complaint is wholly deficient with regard to mens rea relating to XLR-11. No allegation is made that Hummel knew that XLR-11 was a

controlled substance analogue.

The Complaint does not allege specific facts plausibly showing that Hummel knew that AM-2201 or XLR-11 was an unlawful analogue.  For this reason, the Complaint fails to allege any unlawful conduct by Hummel or any basis for the forfeiture of Hummel's assets.  The Complaint should be dismissed because it fails to state a claim upon which relief may be granted.

### III.     The Complaint should be dismissed because the Analogue Act is unconstitutional as applied to XLR-11 and AM-2201.

This case presents a textbook example of a statute that is unconstitutionally vague as applied.  While the Analogue Act may pass facial constitutional muster and be capable of constitutional application under other circumstances involving different substances, its application to XLR-11 and AM-2201 under the present circumstances violates Hummel's Fifth Amendment guarantee of due process of law.  The applicable law is well established.  "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).  "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that the laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  A statute is unconstitutionally vague if it fails to provide adequate notice of the proscribed conduct.  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  The Constitution does not permit a person to "be held criminally responsible for conduct which he could not reasonably understand to be proscribed."  *United States v. Harris*s, 347 U.S. 612, 617 (1954).

8

As noted, the Complaint does not allege that Hummel knew that AM-2201 or XLR-11 is an analogue of JWH-018 or that either substance is unlawful.  But going further, the Complaint does not even assert that Hummel knew that the DEA or any other governmental entity considered either substance to be an unlawful analogue.  Indeed, the Complaint provides no basis for belief that *anyone outside the government* knew prior to July 2012 that the government considered XLR-11 and AM-2201 to be analogues of JWH-018 or otherwise unlawful.  There is a good reason for this omission in the Complaint.  As set forth below, it was not possible for a person to learn prior to July 2012 that the federal government considered AM-2201 or XLR-11 to be analogues of JWH-018 or otherwise unlawful.

Evidence relevant to the question of the constitutionality of the Analogue Act as applied to XLR-11 was received in the *Hummel/Fedida* matter.  While the district court denied Hummel's motion, Hummel has appealed that order and respectfully suggests that it was error for the reasons explained below.  As further explained below, the materials from the *Hummel/Fedida* litigation, as well as from the *Smoke Shop* litigation, illustrate in a compelling fashion the unconstitutional vagueness of the analogue statute as applied to XLR-11, and Hummel incorporates them by reference in support of this motion to dismiss.  Hummel provides additional evidence in this motion to dismiss regarding the unconstitutionality of the Analogue Act as applied to AM-2201.  In this regard, the Declaration of Joseph P. Bono, a former chemist for the DEA and other government agencies, is attached as Exhibit 13 ("Bono Declaration"), the expert report of Dr. Terry Kenakin of the University of North Carolina School of Medicine ("Kenakin Report") is attached as Exhibit 14, and the opinion letter of Dr. James R. McCarthy

of Indiana University-Purdue University Indianapolis ("McCarthy letter") is attached as Exhibit 15.

A.   **The Court may consider Hummel's vagueness challenge on a motion to dismiss.**

The Court may properly consider Hummel's claim that the analogue statute is vague on his motion to dismiss.  Federal courts routinely evaluate the constitutionality of the analogue statute as applied to a particular substance.  *United States v. Fisher*, 289 F.3d 1329, 1332 (11th Cir. 2002); *United States v. Carlson*, 87 F.3d 440, 443 (11th Cir. 1996); *Forbes*, 806 F. Supp. 233-39.  Procedurally, such an evaluation typically takes place through the vehicle of a pretrial motion to dismiss, which often requires consideration of expert testimony regarding whether a substance meets the definition of an analogue, as well as of whether the matter is sufficiently clear to provide constitutional notice.  *See, e.g.*, *Roberts*, 363 F.3d at121 (discussing expert testimony at pretrial hearing on motion to dismiss addressing "whether it was sufficiently clear that" substance was substantially similar to GHB); *Klecker*, 348 F.3d at 70 (discussing evidentiary hearing on pretrial motion to dismiss regarding whether substance was an analogue of DET); *Fisher*, 289 F.3d at 1338 (discussing expert testimony on pretrial motion to dismiss regarding whether substance was substantially similar to GHB and whether it has a substantially similar effect on the central nervous system); *Forbes*, 806 F. Supp. 2d at 236-37 (holding analogue act to be unconstitutionally vague as to substance where there was no scientific consensus regarding whether it is substantially similar to a controlled substance).

B.   **Prong One of the Analogue Act is Unconstitutionally Vague as Applied to XLR-11 and AM-2201.**

### 1.   uncertainty regarding the meaning of "substantial similarity" of chemical structure

The first issue presented is the application of the statutory phrase in the first prong of the analogue statute, which proscribes AM-2201 and XLR-11 only if the chemical structure of those substances "is substantially similar to the chemical structure" of JWH-018. § 802(32)(A)(i). Several witnesses at the *Hummel/Fedida* hearing offered testimony regarding the meaningfulness – or lack thereof – of the "substantially similar in chemical structure" standard under prong one of the Analogue Statute. The term "substantially similar in chemical structure" is not a term used in the field of chemistry, but a legal term. Ex. 3 at 28, 82, 209. There are not at present any scientific guidelines for the application of that term. *Id.* at 27-28. Indeed, Professor Paul Doering, the Distinguished Service Professor Emeritus in the Department of Pharmacotherapy and Translational Research at the College of Pharmacy within the University of Florida and former Director of the statewide Drug Information and Pharmacy Resource Center, described the phrase as "uninterpretable." *Id.* at 193-94. The phrase was described by Dr. Stouch, the President of Science for Solutions, LLC, and Adjunct Professor of chemistry and biochemistry at Duquesne University who has spent 36 years in the study of chemistry and biochemistry and more than 30 years in the discovery of new pharmaceuticals, as "essentially nonsense." *Id.* at 82. Professor Gregory Dudley, Associate Professor and Associate Chair in the Department of Chemistry and Biochemistry at the Florida State University, stated that this is a "subjective standard" that "will always be subject to interpretation, perspective, and opinion." Ex. 4 Ex. A at 11.

Moreover, it is not just that there is a lack of scientific consensus about the meaning of

the term "substantial similarity."  As noted in *Forbes*, "[t]he scientific community cannot even agree on a methodology to use to determine structural similarity." 806 F. Supp. at 237.  At the *Hummel/Fedida* hearing, Ms. Lindsey Reinhold, a forensic chemist at NMS labs serving as Chair of the recently-created Advisory Committee for the Evaluation of Controlled Substance Analogues, explained:

> The problem is that that question [of substantial similarity] is very, very difficult to answer because we have no guidelines.  There's no scientific method.  There is no set of rules as to what constitutes similarity or what it means to be "substantial" versus "just similar."  So there is no set way to evaluate that.

Ex. 3 at 27-28.  Ms. Reinhold and Professor Heather Harris of Arcadia University, Chair of the Structure Subcommittee of the Advisory Committee for the Evaluation of Controlled Substance Analogues, agreed that no scientific criteria currently exist for determining whether two substances are substantially similar in their chemical structure.  *Id*. at 34, 96-97.  Indeed, although at the *Hummel/Fedida* hearing it took a few tries to get the government's expert chemist, Dr. Terrence Boos of the DEA, to admit it, *see id*. at 249-51, he ultimately was forced to concede this point specifically as it concerned the methodology that he himself used:

> THE COURT: Listen to me.  The question is, do you agree or do you not agree as to whether or not there is consensus within the scientific community that the methodology that you utilized to determine whether or not these compounds are substantially similar within the definition of the [Analogue] Act exists?  Is there consensus or is there not?
>
> THE WITNESS: I think today has demonstrated there is not.

*Id.* at 251.[5]  This lack of consensus about any accepted methodology to determine substantial

_____

[5]The lack of scientific support for Dr. Boos' methodology and conclusions was also noted by Ms. Reinhold, Ex. 3 at 36, Dr. Stouch, *id*. at 61-62, Ms. Harris, *id*. at 98-100, Professor

structural similarity means that it is not possible for a person to determine in advance of his or her contemplated conduct whether that conduct is or is not lawful.

### 2.    the lack of scientific consensus regarding whether XLR-11 is substantially similar in chemical structure to JWH-018

As could be expected from the inherent vagueness and non-scientific nature of the term "substantially similar," here, just as in *Forbes*, there is no scientific consensus about whether the chemical structure of XLR-11 is substantially similar to that of JWH-018.  Two-and three-dimensional renderings of the chemical structures of XLR-11 and JWH-018 are attached as Exhibit 16.[6]  As reflected in these diagrams, both of these substances contains an "indole core," meaning "a benzene ring fused to a nitrogen-containing pyrrole ring."  Ex. 7 at 15.  Each also contains a 5-carbon pentyl chain at what is known as the "1-position" of the pyrrole ring, which in XLR-11 contains a flourine atom at the end. *Id.* at 15 n.8  The substances contain differing "functional groups" at what is known as the "3-position" of the pyrrole ring.  *Id.* at 15-16.  JWH-018 contains at that position a napthyl functional group, meaning a fused pair of benzene rings. *Id.* at 16.  XLR-11 contains a tetramethylcyclopropyl functional group at the 3-position.  *Id.*

At issue is whether a person of ordinary intelligence would have a reasonable opportunity to know that XLR-11 is "substantially similar" in chemical structure to JWH-018 despite the substitution of the tetramethylcyclopropyl group in XLR-11 for the naphthalene group in JWH-018. As explained at the *Hummel/Fedida* hearing, no such opportunity to conform one's conduct

---

DeCaprio, *id.* at 179, and Professor Dudley, Ex.4, Ex. A at 11-14, 16-17.

[6]Additional renderings can be found in Professor Verbeck's report, Ex. 1 Ex. 4, at 4-6, Dr. DeCaprio's affidavit, Ex. 1 Ex. 5 at 3; and Dr. Stouch's report, Ex. 1 Ex. 6 at 3.

to the requirements of the laws exists, because according to (1) Ms. Reinhold, (2) Dr. Stouch, (3) Professor Heather Harris of Arcadia University, Chair of the Structure Subcommittee of the Advisory Committee for the Evaluation of Controlled Substance Analogues, (4) Wayne Morris, a forensic chemist with over thirty years of experience, (5) Professor Anthony DeCaprio, an Associate Professor of Chemistry and Biochemistry and Director of the Forensic and Analytical Toxicology Facility and the Forensic Science Certification Program for the International Forensic Research Institute at Florida International University, (6) Professor Doering, (7) Professor Guido Verbeck, Associate Professor of Chemistry and Director of the Laboratory for Imaging Mass Spectrometry at the University of North Texas, and (8) Professor Dudley, the chemical structures of XLR-11 are *not* substantially similar to that of JWH-018. Ex.1 at Ex.7; Ex.3 at 42, 43-44, 47, 52 (Reinhold); Ex.1 at Ex.6; Ex.3 at 57-59, 66 (Stouch); Ex.1 at Ex.8; Ex.3 at 94-95 (Harris); Ex.3 at 115 (Morris); Ex.1 at Ex.5; Ex.3 at 166-67, 170 (DeCaprio); Ex.3 at 195 (Doering); Ex.1 at Ex.4; Ex.3 at 205 (Verbeck); Ex.4, Ex.A at 1-7, 11-13, 16-17 (Dudley).  Only a single chemist is known to believe otherwise – Dr. Boos of the DEA.

Although Dr. Boos testified in *Hummel/Fedida* and *Smoke Shop* to his belief that the chemical structure of XLR-11 is substantially similar to the chemical structure of JWH-018, the basis for his belief does not satisfy even one of the criteria for its admission under Rule 702 of the Federal Rules of Evidence as elucidated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993).  Those factors are: (1) whether the expert's proffered opinion is generally accepted in the field; (2) whether the opinion has been subjected to peer review and publication; (3) what the opinion's known or potential rate of error is, and whether standards

controlling its operation exist; and (4) whether the opinion can be (and has been) tested. *Id.*

Dr. Boos testified for the government at the *Hummel/Fedida* and the *Smoke Shop* hearing and, as noted above, he was ultimately forced to acknowledge on cross-examination that the methodology he used to reach his conclusion of substantial similarity of chemical structure is not generally accepted in the field. Ex. 3 at 251; Ex. 10 at 221-22.  Dr. Boos went on to concede, as he had to, that his methodology has never been published. Ex. 3 at 251; Ex. 10 at 222.  Dr. Boos further acknowledged that he was unaware of any way to test his conclusion and did not know what the potential rate of error in his methodology might be. Ex. 10 at 222-23.

Even putting the *Daubert* issues to one side and considering the testimony of all of the various experts on prong one, it remains that no person of ordinary intelligence could reasonably have known that Hummel's eight expert chemists are incorrect and that Dr. Boos alone is correct because the opposite is almost certainly true.  Hummel's experts displayed a wide array and depth of educational background and professional experience.  Ms. Reinhold, Ms. Harris, and Mr. Morris have spent years in laboratories assisting law enforcement in the identification of controlled substances and their analogues.  Dr. Stouch spent a career analyzing chemical structures and developing new drugs.  Professors DeCaprio, Doering, Verbeck and Dudley are highly credentialed academics at well-regarded educational institutions.  Indeed, Professor Doering frequently testifies for the United States, and had done so earlier on the very same day as the *Hummel/Fedida* hearing. Ex. 3 at 192.  The government would therefore have been hard pressed to question his credibility, and it did not.  Counsel for the government explicitly stated to Professor Doering that he had "no intention of cross-examining" him, *id*. at 199, and in fact

the record reflects that Professor Doering was not asked a single question on cross-examination regarding his opinion that XLR-11 is not substantially similar in chemical structure to JWH-018. *See id*. at 197-202.  Second, the same was true of Professor DeCaprio – government counsel did not ask him even one question regarding his opinion that XLR-11 does not meet prong one of the Analogue Act. *See id*. at 182-89.  The testimony of Professors Doering and DeCaprio regarding prong one was essentially unchallenged by the government.

Hummel's experts were not only diverse, highly qualified, and in some cases unchallenged by the government, but also quite detailed, concrete, and specific in their testimony and opinions.  Their opinions were consistent with one another and with the published data and literature.  They explained in common sense terms the basis for their opinions, including reasons that the substitution of the naphthyl group in JWH-018 with the tetramethylcyclopropyl group in XLR-11 is a significant change in structure. *Id*. at 43-44 (Reinhold); 57-61, 63-64, 66 (Stouch); 119-26 (Morris); 167, 179 (DeCaprio); 195 (Doering).  Professor Dudley's written report submitted after the hearing is as comprehensive, clear, and compelling a presentation of the prong one issues as would appear reasonably possible. *See* Ex. 4 Ex. A.

In contrast, Dr. Boos was largely conclusory in his analysis and evasive in his answers on cross-examination.  He failed to give any convincing or even coherent explanation for his position that the substitution of the naphthyl group in JWH-018 with the tetramethylcyclopropyl group in XLR-11 is an insignificant change in structure.  Dr. Boos relied entirely on two-dimensional renderings of the molecules, which masked critical differences between the naphthyl group – which is flat and planar and can engage in pi-stacking, Ex. 3 at 57-60 – and the

tetramethylcyclopropyl group, which is globular and cannot engage in pi-stacking.[7] *Id*. at 58-59, 61, 267; *see also* Ex. 4 Ex. A at 11-12. Dr. Boos also relied heavily in his structural similarity analysis on matters such as the history of other controlled substances, Ex. 3 at 224, 248-49, and reports from "emergency department physicians" and "poison control centers." *Id*. at 224-25. As explained by Professor Dudley, such considerations are extraneous as a matter of science. Ex.4 Ex. A at 16-17.

### 3.    The district court's decision on Hummel's Rule 41(g) motion

Notwithstanding the testimony described above, the district court that heard Hummel's Rule 41(g) motion concluded that the Analogue Act is constitutional as applied to XLR-11 based on the holding that "[a] reasonable layperson who examines the two-dimensional drawings of the chemical structures of ... XLR-11[] and JWH-018 could plausibly conclude that such substances are substantially similar," which the district court stated "is all that is required." Ex. 6 at 16; Ex. 7 at 18. As discussed in Hummel's Initial Brief in his appeal of that ruling, Ex. 8 at 36-39, the district court misapprehended the legal standard applicable to whether a statute is unconstitutionally vague.

If Judge Dalton were correct that "all that is required" to satisfy due process is that a person "could plausibly conclude" that certain conduct violates the law, Ex. 7 at 18, the protection provided by the vagueness doctrine would be eviscerated. The pertinent question is not merely whether one could plausibly conclude that XLR-11 is substantially similar in

---

[7]A more detailed discussion of the structural differences between XLR-11 and JWH-018 can be found in Hummel's Initial Brief. See Ex. 8 at 16-18.

chemical structure to JWH-018, however, but whether reasonable people could think that they are *not*.  While the district court stated that the "differing opinions of experts on the issue of substantial similarity does not" render the statute vague, Ex. 7 at 17, it appears to have overlooked the principle clearly stated by the United States Supreme Court that due process is violated where reasonable people interpreting a statute could "differ as to its application." *Connally*, 269 U.S. at 391; *see also United States v. Guagliardo* 278 F.3d 868, 872 (9th Cir. 2002) (term's vagueness violated due process where "[r]easonable minds can differ greatly about" its scope).  This is an application of the principle that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."  *City of Chicago v. Morales*, 527 U.S. 41, 58 (U.S. 1999) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)).  Accordingly, a person "cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions." *Connally*, 269 U.S. at 393.  Thus, if reasonable people could differ with the opinion that  XLR-11 is substantially similar to JWH-018, then the analogue statute is unconstitutionally vague as to those substances.  Given that numerous individuals who are not only reasonable, but are well-credentialed scientists who are highly qualified to opine on the matter, have concluded that XLR-11 is not substantially similar in structure to JWH-018, the premise that someone might plausibly conclude otherwise is not enough to save the Analogue Act from vagueness as applied to those substances.

Further, Judge Dalton's holding that the fact XLR-11 shares "the same core chemical structure with JWH-018" is sufficient to put reasonable people on notice that the substances may

be analogues, Ex. 7 at 17-18, is at odds with the second principle that underlies the vagueness doctrine. That is, a vague law violates due process because "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned*, 408 U.S. at 108. "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09. Approximately 2400 chemical compounds share the same indole core as XLR-11 and JWH-018. Ex. 4 Ex. A at 7; *see also* Ex. 3 at 205-06. A standard that permits such a large class of substances to be treated as potential analogues delegates to law enforcement and prosecutors sweeping authority and allows the type of arbitrary and discriminatory enforcement the Supreme Court has held is forbidden.

Finally, Judge Dalton's conclusion that a layperson who examined a two-dimensional drawing of XLR-11 could "plausibly" conclude they are substantially similar to JWH-018 is flawed as a factual matter. The only testimony that supported this conclusion came from the government's expert, Dr. Boos. As Dr. Boos conceded, however, there is not agreement among scientists even regarding the methodology that should be used to determine whether two substances are substantially similar in their chemical structure. Ex. 3 at 251; *see also id*. at 34, 96-97; *Forbes*, 806 F. Supp. at 237. Moreover, as discussed above, Dr. Boos' testimony does not satisfy *Daubert* for other reasons as well.[8] Further, although Judge Dalton framed the disagreement between Hummel's experts and Dr. Boos as involving whether the substances

---

[8]The *Hummel* opinion did not address Hummel's *Daubert* objection to Dr. Boos' testimony. Ex. 7.

should be analyzed using two- or three-dimensional models, that description significantly understates the fundamental differences in their testimony.  Hummel's experts did not merely address in the abstract the number of dimensions in which these substances should be modeled, but rather how the molecules' structure affected their function and could dramatically impact the effect they might have on the human body.  Ex. 3 at 57-64, 89-90, 105-06, 119-26, 127-38.  The testimony of Hummel's experts demonstrated that the significant differences in the structure of XLR-11 and JWH-018 make it impossible to conclude that the substances are substantially similar without regard to whether they are viewed in two or three dimensions.

4.      **the lack of evidence regarding whether AM-2201 is substantially similar in chemical structure to JWH-018**

The issue of whether AM-2201 is substantially similar in chemical structure to JWH-018 has not been as extensively litigated as the issues related to XLR-11.  Two- and three-dimensional renderings of AM-2201 can be found in the Bono Declaration.  Ex. 13 at 3.  The government's contention that AM-2201 is substantially similar in chemical structure appears to rest solely on the fact that AM-2201 differs from JWH-018 by one atom.  Doc. 5 ¶ 27.  The court in *United States v. Roberts*, 363 F.3d 118, 124 (2d Cir. 2004), however, rejected the argument that mere "visual similarity between the two-dimensional diagrams of" two molecules that "differ[ed] from each other by only two atoms" was "standing alone, enough to establish 'substantial similarity [in] chemical structure.'"  The court recognized that "it might well be that a one- or two-atom difference in a molecule made such a radical difference in the substance's relevant characteristics that any similarity in two-dimensional charts would not be 'substantial' enough to satisfy the definition of 'controlled substance analogue.'" *Id.*

20

As the McCarthy Letter explains, "careful analysis" of the two compounds' "structural features" shows that AM-2201 is not an analogue of JWH-018. Ex. 15 at 1. As Dr. McCarthy explains, "introduction of even just a single flouride into a molecule can substantially change the molecule." *Id.* Accordingly, the addition of a flouride atom requires classification of the "flourinated molecule as a new series." *Id.* For these reasons, Dr. McCarthy concludes that AM-2201 is not an analogue of JWH-018 within the meaning of the Analogue Act. *Id.* at 3. Moreover, as discussed in the Bono Declaration, a scientifically valid comparison of any two substances, including JWH-018 and AM-2201 requires consideration not only of the three-dimensional structure of the molecules, but also of the physical and chemical structures of the substances. Ex. 13 at 11. The Complaint provides no information regarding the structural, physical, or chemical properties of AM-2201 or JWH-018.

### C.   Prong Two of the Analogue Act is Unconstitutionally Vague as Applied to XLR-11 and AM-2201.

Turning to prong two of the Analogue Act, the government's case fares no better. A person of ordinary intelligence could not reasonably be on notice that XLR-11 or AM-2201 has substantially similar or greater stimulant, depressant, or hallucinogenic effects on the human central nervous system as JWH-018. There is simply not sufficient scientific data available regarding the effects of either AM-2201 or XLR-11 on humans to know what those effects are at all, much less when compared with JWH-018.

The testimony of the government's experts at the *Hummel/Fedida* hearing confirms the constitutional deficiency in the application of prong two to XLR-11. No person of ordinary intelligence could reasonably know that XLR-11 meets prong two of the Analogue Act because

the data is not presently available to make that determination, and certainly was not available during the time period relevant here.  Both Dr. Boos, the DEA's expert chemist, and Dr. Ghozland, the DEA's expert toxicologist, admitted at the *Hummel/Fedida* hearing that due to a lack of data, the hallucinogenic, stimulant, or depressant effect on the central nervous system of XLR-11 is presently unknown. Ex. 3 at 240-41, 263-64, 303.  Dr. Boos admitted that this means that it is therefore impossible to say whether that substance meets prong two.  *Id*. at 263-64.  The most Dr. Ghozland could say was that she "anticipates" that XLR-11 will meet prong two, *id*. at 295, but that the data necessary to make that determination was not available.  *Id*. at 300. Following the *Hummel/Fedida* evidentiary hearing, the government filed a second declaration of Dr. Ghozland that relied on unpublished preliminary data that had only become available in January 2013, after the date of the evidentiary hearing, again highlighting the uncertainty and lack of data at this time regarding the pharmacological effects of XLR-11.

Similarly, Dr. Kenakin has reviewed the available literature regarding the pharmacological effects of AM-2201.  He concluded that "[t]here is a paucity of specific data to definitively show AM2201 produces euphoria in humans through activation of CB-1 receptors." Ex. 14 at 7.

Given the dearth of available scientific data regarding XLR-11 and AM-2201, persons of ordinary intelligence could not reasonably have known that either substance meets prong two of the Analogue Act.

**D.    The government provided no notice it considered AM-2201 and XLR-11 to be unlawful analogues.**

Taken as a whole, on the question of whether XLR-11 is an unlawful analogue of JWH-

018, the testimony of Ms. Reinhold, Dr. Stouch, Ms. Harris, Mr. Morris, Professor DeCaprio,

Professor Doering, Professor Verbeck, and Professor Dudley is more credible than that of Dr.

Boos and Dr. Ghozland.  But critically, it is unnecessary for this Court to resolve that dispute.

Because if Ms. Reinhold, Dr. Stouch, Ms. Harris, Mr. Morris, Professor DeCaprio, Professor

Doering, Professor Verbeck, and Professor Dudley – people of highly *uncommon* intelligence

on such matters – believe XLR-11 is not an analogue of JWH-018, it cannot be said that people

of "ordinary intelligence" could possibly have "a reasonable opportunity to know" that the

opposite is true.  And the government made no effort to tell them.

Dr. Boos testified that he wrote "the overall opinion" for the DEA that XLR-11 is an

analogue of JWH-018 in May 2012.  Ex. 3 at 257.  Dr. Boos freely admitted, however, that his

opinions for the DEA were never made public, and at all times relevant to this matter, he was

unable to identify anywhere that anyone could go to learn that the government considered XLR-

11 to be an unlawful analogue of JWH-018.  *Id*. at 257.  It was likewise impossible to learn that

the government considered AM-2201 to be unlawful until Congress added that substance to

Schedule I in the Synthetic Drug Abuse Prevention Act of 2012, S.3187 (July 9, 2012).

A person of ordinary intelligence faced with the chemical structures of XLR-11, AM-

2201, and JWH-018 "must necessarily guess" whether XLR-11 or AM-2201 is a controlled

substance.  And if Dr. Boos' position is correct, it appears that any such person of ordinary

intelligence who elected to first consult with multiple professors at the leading public

universitues in the state and other experts in the field of chemistry would end up guessing

incorrectly.  The Analogue Act is unconstitutionally vague as applied to XLR-11 and AM-2201.

23

The Court should therefore grant the motion to dismiss and order the return of all assets seized from Hummel.

**IV.    The Complaint should be dismissed because it lacks sufficient particularity.**

As noted above, Supplemental Rule E(2)(a) requires a forfeiture complaint to be pled with particularity.   Here, the Complaint alleges that AM-2201 and XLR-11 are controlled substance analogues, but does not limit the assets it seeks to have forfeited to those related to either substance.   Instead, it alleges that Hummel manufactured and distributed synthetic cannabinoids containing "XLR-11, AM-2201 and *other controlled substance analogues*," without specifying what those alleged other controlled substance analogues are.  Doc. 5 ¶ 24 (emphasis added).   Similarly, the Complaint alleges that Hummel's businesses sold only "controlled substance analogues" or "synthetic cannabinoid products," but does not contend that all of those products contained XLR-11 or AM-2201.  *Id.* ¶¶ 25, 26, 46, 47.

These allegations fail to satisfy the particularity required by Supplemental Rule E for at least two reasons.  First, they lead to a reasonable inference that at least some of the assets sought to be forfeited are or may be derived from the sales of products containing substances other than XLR-11 or AM-2201.  The Complaint does not, however, identify those substances or contain the information necessary to evaluate whether they are in fact controlled substance analogues or whether the necessary mens rea existed for a violation of the Analogue Act.   Second, the Complaint does not attempt to separately identify the amounts derived from the sales of XLR-11, AM-2201, or other unidentified substances.  As discussed above, the issues and facts presented by XLR-11 and AM-2201 are different, and any other substances that are not identified in the

24

Complaint may present unique issues of their own.  Because the Complaint does not state with specificity what alleged analogues the funds the government seeks to forfeit are derived from, it fails to satisfy the particularity in pleading required by Supplemental Rule E.

**V.   In the alternative, the government should be ordered to provide a more definite statement.**

In the alternative, if the Complaint is not dismissed, Hummel moves under Rule 12(e), Fed. R. Civ. P., for a more definite statement of the asserted nexus between Hummel's alleged unlawful conduct and the assets sought to be forfeited.  As the Complaint is presently framed, it is not practical for Hummel to respond to it.  It effectively shifts the burden to him to identify the assets derived from sales of XLR-11, AM-2201, and any other unspecified substances.  This is not the proper function of the pleading process.  Before Hummel is required to respond, the specific allegations requiring a response should first be clear from the Complaint.

**VI.   Conclusion**

For the reasons set forth above and in the motion to dismiss, the Complaint should be dismissed.  In the alternative, the government should be required to provide a more definite statement.

**VII.   Request For Evidentiary Hearing**

Hummel requests an evidentiary hearing on the Constitutional issue presented in Part III of this Memorandum.  While a motion to dismiss would ordinarily be decided from a review of the four corners of the complaint, here the face of the Complaint presents a question of whether the law underlying it is unconstitutionally vague as applied.  This question may require an evidentiary hearing to resolve.

Respectfully submitted

/s/ James E. Felman
James E. Felman (FBN 0775568)
jfelman@kmf-law.com
Katherine Earle Yanes (FBN 0159727)
kyanes@kmf-law.com
KYNES, MARKMAN & FELMAN, P.A.
Post Office Box 3396
Tampa, Florida 33601-3396
Telephone:     (813) 229-1118
Facsimile:     (813) 221-6750

*Counsel for Timothy Hummel and Patricia Hummel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2013, I electronically filed the foregoing with the

Clerk of the Court which will send a notice of electronic filing to:

William Faulkner
bfaulkner@pinellascounty.org

Brian Fitzgerald
fitzgeraldb@hillsboroughcounty.org

James Muench
james.muench2@usdoj.gov

Mark Rankin
mrankin@shutts.com

David Weisbrod
dweislaw@yahoo.com


/s/ James E. Felman
James E. Felman

26